Let's hear the next case, United States v. Nunez. Good morning, Your Honors. My name is Alan Seidler. I represent Franklin Nunez, who is a 40-year-old man who suffered a lifetime of depression, and that was manifested by alcohol abuse, drug abuse, and suicidal attempts and suicidal ideation. So Mr. Nunez was sentenced to two years in prison for violating supervised release when the guideline called for a sentence of four to ten months. He was also sentenced to a lifetime of reimposition of supervised release for a lifetime. I submit on behalf of Mr. Nunez that under the specific conditions of this case, that sentence was not reasonable, and more than unreasonable, it is counterproductive to the well-being of Mr. Nunez. Judge Sullivan seemed to be very concerned, and understandably, to a degree, that he wanted to protect the public from the conduct of Mr. Nunez getting behind the wheel of a car. But getting behind the wheel of a car, drunk, may be a violation of supervised release, but it's not a federal offense. So there was another alternative to Judge Sullivan protecting the public, and that was leaving law enforcement and leaving its supervision of Mr. Nunez to the proper authorities, which was city or state authorities. And more basically, if you have a man who suffered from depression his whole life, who's tried to kill himself on one or more occasions, who has drug dependency and alcohol dependency, what good is sending a depressive for 40 years to prison? How is prison going to deal with a depression, which is the root cause, which everybody agreed... Well, I think we should try to separate out the question of the length of the prison sentence, which was more than the guidelines, but not very far, and which could be based on an abuse of trust, because your client received relatively easy treatment on the part of this judge, who thought he was a decent man, and tried once and tried twice and tried three times, and then gave a particular sentence. So I think we should separate that from the question of whether lifetime supervised release in a case of DUI is something that is appropriate. We've criticized supervised release for a lifetime in any number of other cases. We have approved it in some sex cases and in a couple of violent drug cases, but we have not seen anything of it in this case. So I think there's a difference between the sentence of two years and the supervised release, and whether it was explained and justified. Well, it was also a standard set by the judge that during the lifetime of supervised release, medical professionals and probation would have to come back to convince him, essentially a layman, that supervised release was no longer necessary based on the medical and psychological condition of this appellant. There was a further problem here, and that is that originally when the judge imposed supervised release with the condition that the appellant was to receive medical treatment, I think he did that improperly, and it was truly counterproductive. What happened is that the judge said, well, you need medical treatment, and I'm going to tell your treating person, doctor, therapist, to report back the details to probation. So the judge ordered, essentially, that the doctor-client privilege shouldn't apply. But that's another case. That isn't before us. But it is, because the defendant got up at sentencing, Your Honor, and said, you know what, I was receiving therapy, and it didn't work, because my therapist was reporting my statements to probation, and I lost confidence in my ability to confide in my therapist, because I knew everything I would say in a medical setting was going to be reported. What's before us is there was a violation of supervised release. There's no question that there was, and whether the sentence for that is appropriate. Whether the original supervised release was what's desirable or whatever isn't before us. Try to concentrate on the case. Well, I am trying to concentrate on the case as best I can, but I would agree with you, Your Honor. I have not seen a case where lifetime supervised release is imposed because a person gets drunk and gets behind the wheel of a car. But it's not that it happened once. It happens repeatedly. There were eight violations of supervised release, and counsel even said that the condition was not curable. So I can see that what Judge Sullivan was thinking was, let's subject him to supervised release, and you can get treatment through supervised release, and you can keep track and try to work on the problem. I mean, if you, once supervised release is over, the person is cut loose and is on his own, right? That's correct. I mean, I think that's what Judge Sullivan was thinking. But that goes back to my other point as well, and that is, if you want to protect, if your goal is to protect the public, what's the point of sending a sick man to jail for 24 months? When he gets out of jail, he's not going to be better. Well, there are different goals. Well, there are different goals. Multiple goals. As a package. Prison sentence serves some goals, and supervised release serves other goals. As a package. And the last issue that I would like to speak about is, I would ask that, Mr. Nunez thinks there is a substantial issue concerning ineffective assistance of counsel, and he would ask, it was raised here, so the argument could not be... I have a different question. There is in the record that Mr. Nunez from the jail has been sending out rather desperate things to people and to his lawyers. But there was one lawyer and then another one. Have these letters reached you? No. I do receive core links, messages from him. Well, somehow, whatever he is reaching out ought to reach somebody, and you're his current counsel, so let me just... Well, I didn't get that. I don't have an explanation. All I know is I received desperate messages from Mr. Nunez, but as to other desperate messages, I don't know. I wish I had an explanation. I just don't know. I just know what I've received from him most recently last night. I mean, he's a desperate man. I don't have anything else to add, I'm sorry. Thank you. We'll hear from the government. May it please the court. Ni Tian for the United States. I would just like to first touch on the reasonableness and the evidence in the record that supports Judge Sullivan's imposition of the lifetime term of supervised release in this case. Now, as Judge Chen pointed out, the reason that Judge Sullivan had... The set of facts that came before Judge Sullivan at the time of the sentencing was that the defendant was, for the underlying crime, was given a significant break from the guidelines, a 28-month significant break. Because, Judge Sullivan thought, you have some issues, you have some ongoing mental health struggles, you have substance abuse problems, but fundamentally, I think that you're a good man. I'm going to give you this opportunity to prove yourself. And six months after the defendant was released from prison, and just six months into his first term of supervised release, he breaks that trust by getting arrested. There's no doubt that he broke the trust. And there's no doubt, also, that he... There's no indication that he went back and violated what the original crime was, because of which the drug thing. It is all to do with these traffic, and very serious ones, though the last one was not anywhere near as serious as the earlier ones. My question is, why on earth, in a situation like this, isn't a considerable period of supervised release, say five years or something, of the kind of thing that has been imposed in cases of people who have violated DUI five times? Other cases like this, and there's been no examination of why this case is different from the other, isn't sufficient. If this guy violates supervised release during those five times, then he'll be hit again. If he doesn't, and somehow in the next five years behaves okay, what is there to be said for him being under supervised release for the rest of his life beyond it? I mean, I don't understand the link. We are very worried about how this fellow is going to act. No doubt about that. And he breached trust and so on. But why not have a period of supervised release that is extensive enough to see if he has gotten himself under control or not, rather than saying, you're a lifer. That's what, I mean, I'd like to have a reason given to me for that. That's my problem. I can briefly address that. The reason that was in the record for Judge Sullivan's imposition of a life term of supervised release is that as Judge Sullivan recognized as the defense counsel, Mr. Ginsburg during the sentencing proceeding recognized, and as defense counsel now recognized, the defendant's problem, Mr. Nunez's problem, is an ongoing, a lifetime ongoing, continuing struggle with mental health, with substance abuse. And the result of those issues, ongoing issues, is that he consistently gets behind a car and drinks and drives and endangers others. And lifetime supervised release sounds long. However, unlike a term of incarceration, the length of supervised release, as well as the length of a life term of supervised release, both upon the defendant's motion, perhaps, for example, in your judge's hypothetical. Yes. There are other cases, another case that I recently had with, from Judge Sullivan, in which it was not lifetime, but was a fairly long length, in which he said expressly, this is subject to reconsideration. I don't see that here. It is, it can always be done. It can always be done. But the normal thing is to do it the other way, to say there is supervised release for an extended period of time, and then if a person is behaving okay, then why do more? Your Honor, I think what Judge Sullivan was responding to on this record is the fact that the defendant has been going through a very long, continuing struggle with both mental health and substance abuse issues. And in recognition of that ongoing lifetime struggle, Judge Sullivan, in his best estimation, thought that the defendant can benefit from this additional resource in the form of supervised release, perhaps for that much time. However, Judge Sullivan did mention that, yes, there's going to be this mental health and substance abuse treatment that's part of the conditions, but we can revisit that if things change. And I think that is that the revisitation of the length and the conditions of supervised release is implicit. And ultimately... There's a statute, isn't there, that allows for early termination of supervised release? That's correct, Your Honor, and if circumstances change, if things are better, if the defendant's mental health struggles and substance abuse struggles are better managed at some point and things change, then the defendant can and should, at that point, bring a motion for early termination of supervised release. But let's assume that this defendant continues to be a very troubled person, but that over the next five years, this person doesn't touch a car. Doesn't touch a car. Now, does that mean that supervised release for the rest of his life is then eliminated? Or does it mean that because it is there and he is still a troubled person, he's under supervised release, even though the reason he violated supervised release was this particular car type of session? Again, I'm just asking what the starting point is. Is the starting point, if he manages for five years to stay away from cars and the things that have caused the trouble, should he be subject? Or is it something where you say this guy's a troubled fellow, so he might as well be under supervised release for the rest of his life, which is a remarkable kind of a sentence? Your Honor, I don't think that those facts are before this Court at this point. At this point, what we have seen is that during the underlying sentencing, Judge Sullivan sentenced the defendant to three years supervised release, hoping that in those three years he will have received enough resources that he'll be able to manage whatever troubled him, and to be able to manage that and to control that. But what happened in those three years is that in not even the full three years, the defendant got himself in trouble over and over again, getting arrested, drinking and driving, hitting multiple cars. And what that demonstrated was that the defendant, indeed, was at that point incapable, that just having – that he was incapable of controlling himself, that the treatment that he was receiving thus far has not been able to give him the tools that he needed in order to live a life that did not subject him to continuing – posing a continuing danger to the community. And that is what Judge Sullivan was responding to when he imposed this sentence. But aren't most people who violate supervised release also people who are incapable of controlling themselves? And when I see a five-person DUI person getting supervised release for a certain number of years, I want to know what the difference between this case is and the others. I mean, we could have a system in which everybody who did certain types of things would be on supervised release for the rest of their lives. And one could always justify it. But why, you know, some kind of equality among sentencing? You know, I think that the difference here is that the record has established that the defendant was undergoing – that he was doing what he was doing, that he was drinking and driving, not because he was a bad person, but because he could not help himself and that it was due to a lifetime struggle with mental health, with substance abuse. And that is what prompted Judge Sullivan to then respond in kind that perhaps what this man needs is ongoing help, this assistance, for as long as he needs it. Thank you. Thank you. The court has no other questions. Thank you. And we'll hear the rebuttal. Thank you. Your Honor, the only other issue that I would like to – Talk in the microphone, please. Yes, sir. The other issue that I would like to raise is that Mr. Nunez has reason to believe that he was provided ineffective assistance of counsel. He raised it here so as in the future nobody could say he waived the argument. But he would agree that the record is not fully developed here. There was a conference with his attorney and Judge Sullivan that he wasn't privy to prior to sentencing. There was also a sealed government letter which the government filed, which was given to counsel, but he didn't receive it. So he would just like to reserve that issue of ineffective assistance to bring it by way of a habeas or 2255 if the circumstances so warrant. And going just briefly to Judge Calabrese's point, I don't think there was any standard. I mean, he was given supervised release for life, and he's going – frankly, I think he'll probably be troubled for the rest of his life and need counseling for the rest of his life and need treatment for the rest of his life. But at some point, if the criminal activity in conjunction with the depression and the mental issues stops, it seems to me that supervised release for life is really no longer necessary. I mean, he's not – I mean, this isn't – supervised release shouldn't be a government program to take care of people. There are cases where – many cases where the government and the defendant agree that supervised release would not help, and then it can be terminated. I mean, it – I did one the other day, and we terminated supervised release early because it was clear that there was no further point to it. So that – I mean, that can happen. It can happen, but I don't think it necessarily justifies unreasonably sentencing somebody to supervised relief in the first instance. So that is my point. The actual sentence, although it can be modified in the future, doesn't justify the length up front. Thank you, Your Honors. Thank you. We will reserve the decision.